UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RUTH M. COOPER | : | |
| | : | |
| PLAINTIFF, | : | NO. |
| | : | |
| VS. | : | |
| | : | |
| YALE UNIVERSITY | : | |
| | : | |
| DEFENDANT. | : | NOVEMBER 19, 2021 |

## C O M P L A I N T

**COUNT ONE**

1. This is an action for money damages to redress the deprivation by the defendant of rights secured to the plaintiff by the laws of the United States and the State of Connecticut. The defendants subjected the plaintiff to, inter alia, racial and age discrimination, hostile work environment, retaliation and wrongful termination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A.§§ 621, et seq.

The defendant has further subjected the plaintiff to racial and age discrimination, hostile work environment, retaliation and wrongful termination, in violation of the rights secured to the plaintiff by the provisions of the Connecticut Fair Employment Practices Act, C.G.S.A. § 46a-60, et seq., and to the intentional infliction of emotional distress, in

contravention of the laws of the State of Connecticut, invoked pursuant to the Court's supplemental jurisdiction.

2.  Jurisdiction of this Court is invoked under the provisions of Title 28 United States Code §§1331, 1343(3) and 1367(a), and Title 42 United States Code §§1981A, 1983, 1988 and 2000e-5(f).

3.  The defendant recklessly, intentionally and maliciously discriminated against the plaintiff and treated her differently from similarly situated employees not of the plaintiff's race, color, ethnicity, age or who had not complained about unlawful conduct. The defendant's treatment of the plaintiff was due to or motivated by plaintiff's race, color, ethnicity, age or in retaliation for her complaints about unlawful conduct.

4.  The plaintiff, Ruth M. Cooper, was and is a citizen of North Haven, Connecticut. The plaintiff is an African-American female. At all times relevant to the instant action the plaintiff was sixty (60) years of age or older. The plaintiff was born on March 30, 1960

5.  The defendant is Yale University. The defendant is an employer with more than 17,000 employees.

6.  At all times relevant to the instant complaint, the plaintiff was employed by the defendant as an Operations Manager for the Department of Laboratory Medicine of the defendant Yale.

7. The plaintiff was hired by the defendant on February 4, 1991, and terminated on January 7, 2020.

8. The plaintiff was the only African-American manager in the Department of Laboratory Medicine of the defendant Yale.

9. For an extended period of time continuing to the date of her termination, the plaintiff was subjected to an ongoing pattern of harassment, discrimination, retaliation and disparate treatment based upon her race, color, age, gender and in retaliation for her protected complaints.

10. The defendant unfairly punished, disciplined, and ultimately terminated the plaintiff. The defendant treated her differently and more harshly than similarly situated colleagues not of her race, color, age, gender, or who have not complained about defendant's unlawful conduct.

11. Throughout her nearly twenty-nine years with the defendant, the plaintiff's work has always been excellent.  The plaintiff's performance evaluations have accurately reflected her hard work and accomplishments.  The plaintiff's work has uniformly and consistently been rated by the defendant as "Met or Exceeded Expectations."

12. In 2018, however, the plaintiff's reviews began to be prepared by Donna Espenberg, Director of Finance and Administration, Department of Laboratory

Medicine. For the first time ever, portions of her work were rated as "Needs Improvement".

13. Espenberg is a white, non African-American female. Espenberg is younger than the plaintiff.

14. From the outset, Espenberg was rude to the plaintiff, dismissive, acted unprofessionally toward her and treated her more poorly than her white, non African-American and younger colleagues.

15. Espenberg's conduct toward the plaintiff got progressively worse and more hostile. Espenberg would fault her for conduct which she routinely allowed white, non African-American employees to engage in.

16. For example, Espenberg treated Peter Stadolnik, a white, non African-American colleague of the plaintiff also under her supervision, substantially better and less harshly than she treated the plaintiff.

17. The plaintiff complained to Espenberg that Espenberg was less harsh to white, non African-American employees than to her, the sole African-American manager. The plaintiff asked Espenberg why she "cracked the whip" on her and was not strict with or demanding of white, non African-American employees. Espenberg got furious, and in a written reprimand characterized the plaintiff's complaint of disparate treatment based upon her race as "inappropriate behavior".

18. The plaintiff specifically and directly complained to Espenberg, her supervisor, that her conduct constitutes racial discrimination.

19. The plaintiff stated to Espenberg that she was racially discriminating against her by going easy on white, non African-American employees, and coming down on her, a black female.

20. Espenberg dismissed the plaintiff's complaint of racial discrimination, Her response to the plaintiff terrified and further intimiadated the plaintiff. Espenberg demanded of the plaintiff: "Are you joking? You are not serious??"

21. Rather than address the discrimination of which the plaintiff complained directly to her, Espenberg escalated her harassment and punishment of the plaintiff.

20. Immediately after this, Espenberg alleged that the plaintiff's work was exceedingly poor, and put the plaintiff on a Performance Improvement Program ("PIP"). In the PIP, Espenberg characterized the plaintiff's complaints about Espenberg's racism as "insulting".

23. Espenberg began faulting everything that the plaintiff said and did. Words and phrases that the plaintiff used, which were used by other white, non African-American employees, including the white, non African-American chair of the Department, Brian R. Smith, M.D., were suddenly deemed "unprofessional" by Espenberg when spoken by the plaintiff.

24. In May, 2019, Espenberg summoned the plaintiff to her office to impose the Performance Improvement Program upon her, commencing May 28, 2019, to continue until August 22, 2019. Espenberg made clear to the plaintiff that failure of the PIP would result in her termination from the defendant.

25. Present at the meeting was Human Resources Generalist Diane Lorenzo, a white, non African-American female. Her presence indicated that a termination of the plaintiff was a foregone conclusion. The plaintiff had not even commenced the PIP.

26. Throughout the PIP, the feedback from Espenberg was consistently negative. Espenberg told the plaintiff that if she failed the PIP and the plaintiff received a negative performance evaluation, which Espenberg would be preparing, it "would not end well for [the plaintiff]" at Yale. The plaintiff understood this to mean that she would be terminated.

27. With the racism and the efforts to force her out of her job, the plaintiff applied for a position in another department of the defendant. Espenberg, Smith and the defendant's Human Resources Department were aware of the plaintiff's efforts to find another position away from Espenberg and this Department. The defendant refused to transfer or hire the plaintiff for another position and Espenberg, Smith and the HR representative knew this before the plaintiff was informed.

28. As the plaintiff anticipated, Espenberg prepared an absolutely abysmal performance evaluation of her for the period of July 1, 2018 to June 30, 2109.

29. As "predicted" by Espenberg, the plaintiff now had a failed PIP and received an "Unsatisfactory" performance evaluation, her first ever in twenty-nine (29) years.

30. Thereafter, the defendant informed the plaintiff her that she would be terminated, and that her "only option" was to take phased retirement to commence immediately on November 1, 2019.

31. The plaintiff did not want to retire, nor was the plaintiff ready to retire.

32. The plaintiff requested time to seek another position in the defendant.  This is routinely granted to white employees, but was denied to the plaintiff.

33. The plaintiff was pressured to sign the retirement agreement.  When the plaintiff asked the defendant for time to review it, and have it reviewed by an attorney, she was told, "Just sign it, people sign it all the time and are glad to get out of Yale."

34. The plaintiff was promised that she would retain her position for a full year, and then be phased out.

35. The plaintiff was made a number of promises about what her work, her position and her pay would be after signing the retirement agreement.  None of these were honored by the defendant.

36. In the face of having to chose baseless termination after nearly thirty years of excellent service or forced retirement, the plaintiff signed, against her will and under duress.

37. Immediately after it appeared that the defendant was rid of the plaintiff, the defendant did whatever it pleased with her, regardless of the promises made.

38. The defendant immediately attempted to move the plaintiff out of her office, and isolate her away from all of her colleagues and staff. The plaintiff's time at the workplace was reduced.

39. The defendant took away all of the plaintiff's duties and responsibilities, and gave her a humiliating and demeaning make-work job.

40. Although defendant claims that her work is "unsatisfactory" and that the plaintiff needed to be placed upon and subsequently failed a Performance Improvement Program, it immediately charged her with training her white non African-American replacements in the plaintiff's Operations Manager position.

41. The plaintiff was instructed to "train and transition to Peter" Stadolink her duties under Chair's Financial Support. Peter Stadolink is a white male, and is not African-American. Upon information and belief, Stadolink is younger than the plaintiff.

42. The plaintiff was instructed to "train and transition to Dina Bohan" all of her duties regarding Clinical Contracts and Team Leadership. Dina Bohan is a white female and is not African-American. Upon information and belief, Bohan is younger than the plaintiff.

43. The plaintiff was instructed to "transition immediately" Academic Support to Bohan, yet "be available for training and consultation".

44. Regarding ISP Management, the plaintiff was to "train and transition to Michael Moccio". Moccio is a white male, and is not African-American. Upon information and belief, Moccio is younger than the plaintiff.

45. In six other areas of her duties and responsibilities, The plaintiff was to train and transition to Stadolink, Bohan and Moccio.

46. The reason that the defendant gives for its conduct toward the plaintiff – including, but not limited to: placing her on a PIP; claiming failure thereof; rating her "Unsatisfactory"; refusing to transfer her to or hire her in another position; and ultimately terminating her – is the alleged poor work performance of the plaintiff in all aspects of her work. Although the defendant claims that the plaintiff was dramatically unable to perform the requirements of her position, the defendant nevertheless entrusted the plaintiff to train not one, but three of her younger, non African-American replacements.

47. On November 4, 2019, the plaintiff through counsel sent the following letter to the defendant:

> **RE:   Ruth Cooper v. Yale University**
> Dear Friends:
>      This office has been retained to represent Ms. Ruth M. Cooper. Ms. Cooper is the Operations Manager in the Department of Laboratory Medicine.
>      It is our intention to immediately commence civil litigation against Yale University and its agents for race and age discrimination and harassment of Ms. Cooper, in violation of federal and state law.
>      On October 18, 2019, Ms. Cooper signed a document entitled "Yale University Staff Phased Retirement Plan Election And Agreement". This document was signed by Ms. Cooper under duress, subsequent to

> fraud and/or coercion, and was not knowingly and voluntarily executed by Ms. Cooper. Further, Ms. Cooper was denied a meaningful opportunity to consult with counsel prior to signing the subject document.
> The University has further violated pertinent provisions of applicable law, inter alia, in the manner in which the document was executed.
> As such, the document is void, invalid and unenforceable. To the extent necessary to effect the intent of this letter, the document entitled "Yale University Staff Phased Retirement Plan Election And Agreement" is hereby revoked.
> Pursuant to this invalid document, the administrators of the Department of Laboratory Medicine, including Donna Espenberg, Director of Finance and Administration, and Brian Smith, Chair, have scheduled a meeting today, November 4, 2019 at 12:00 p.m. to announce changes to Ms. Cooper's employment duties pursuant to this invalid document.
> Pursuant to the representations herein, it is requested that this meeting be cancelled, that all changes to Ms. Cooper's employment duties, responsibilities, position, tenure and compensation pursuant to this invalid document be immediately halted, returned to and retained at their status prior to the execution of the said document.

48. Shortly thereafter, the defendant revoked the retirement document, and the plaintiff was returned to her position.

49. The harassment and discrimination resumed.

50. On January 7, 2020, the plaintiff was terminated by the defendant.

51. The actions of the defendant, including the termination, constitute ongoing racial harassment and discrimination, age discrimination and retaliation for her complaints thereon, including her legal representative's letter, above.

52. As detailed herein, for an extended period of time continuing to the date of her termination, the plaintiff was subjected to an ongoing pattern of harassment,

discrimination, retaliation and disparate treatment based upon her race, color, age, and in retaliation for her protected complaints.

53. The conduct of the defendant and defendant's agents, officers or employees, continued and was ongoing until the date of the termination, and was continuous, persistent and unabated. The actions of the defendant therefore constitutes a continuing course of conduct up to and including the date of termination.

54. As a result of the conduct detailed herein, the plaintiff suffered severe financial loss, damages, injury, humiliation, emotional distress and other harm, and claims compensatory damages, punitive damages and attorney's fees.

55. The plaintiff has exhausted her administrative remedies in this matter, and has sought and received a Notice of Right To Sue letter from the United States Equal Employment Opportunity Commission, and a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities.

56. The conduct of the defendant constitutes race discrimination, hostile work environment, retaliation and wrongful termination, in violation of the rights secured to the plaintiff by the provisions of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e.

57. As a direct and proximate result of the acts of the defendants, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, loss of employment, loss of rights, duties, obligations or benefits, severe emotional

distress, loss of personal and professional reputation, humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

**COUNT TWO**

1 - 55.  Paragraphs 1 through 55 of Count One are hereby made Paragraphs 1 through 55, respectively, of Count Two.

56.  In the manner described above, the defendant Yale University has subjected the plaintiff to, inter alia, discrimination based upon her age.

57.  In the manner described above, the actions of the defendant constitute violations of the provisions of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A.§§ 621, et seq.

58.  As a direct and proximate result of the acts of the defendant, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, loss of employment rights, duties, obligations or benefits, severe emotional distress, loss of personal and professional reputation, humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

**COUNT THREE**

1 - 55.  Paragraphs 1 through 55 of Count One are hereby made Paragraphs 1 through 55 respectively, of Count Three.

...

56. The conduct of the defendant constitutes violation of the provisions of the Connecticut Fair Employment Practices Act, C.G.S.A. § 46a-60, et seq.

57. As a direct and proximate result of the acts of the defendant, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, loss of employment rights, duties, obligations or benefits, severe emotional distress, loss of personal and professional reputation, humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

**COUNT FOUR**

1 - 55. Paragraphs 1 through 55 of Count One are hereby made Paragraphs 1 through 55 respectively, of Count Four.

56. The actions of the defendant as detailed in the foregoing paragraphs were extreme and outrageous.

57. The actions of the defendant were intentional.

58. The actions of the defendant were likely to cause emotional distress, and that emotional distress was severe.

59. The actions of the defendant constitute the intentional infliction of emotional distress.

60. As a direct and proximate result of the acts of the defendant, the plaintiff has suffered, continues to and will into the future suffer severe financial harm and loss, loss

of employment rights, duties, obligations or benefits, severe emotional distress, loss of personal and professional reputation, humiliation, embarrassment, loss of privacy, upset, anxiety, inconvenience, physical harm, loss of property, and loss of employment opportunities.

**WHEREFORE**, the plaintiff claim judgment against the defendant as follows:

    A. Compensatory damages;

    B. Punitive damages;

    C. Attorney fees and the costs of this action pursuant to all applicable provisions of state and federal law;

    D. Equitable relief pursuant to 29 U.S.C.A.§§ 626(b) and (c), 633a(b) and (c) and all other applicable provisions of state and federal law;

    E. Such other relief as this Court shall consider to be fair and equitable.

## **CLAIM FOR JURY TRIAL**

The plaintiff claims trial by jury of all issues in this case.

THE PLAINTIFF


BY_____/s/_____
        WILLIAM S. PALMIERI
        Fed. Bar No. 14361
        Law Offices of William S. Palmieri, L.L.C.
        110 Whitney Avenue
        New Haven, CT 06510
        (203) 562-3100
        (203) 691-8753 (fax)
        wpalmieri@hotmail.com
        Her Attorney